## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Jay Connor, | **C/A No.** 2:23-cv-546-JD-MHC |
| Plaintiff, | |
| Vs. | **COMPLAINT** |
| John Does 1-10 | **(Jury Trial Requested)** |
| Defendants. | |

RECEIVED
USDC CLERK.CHARLESTON.SC
2023 FEB -8  PM 3: 55

### TYPE OF ACTION

1.   This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled

damages constituting forfeiture or other penalty and S.C. Code Section 37-21.

### PARTIES

2.   Plaintiff is a resident of Charleston County, South Carolina.

3.   The calls alleged in this complaint were made to Plaintiff's wireless phone line in South

Carolina.

4.   The true identity of John Doe is unknown.

5.   John Doe conducts and transacts business in South Carolina.

6.   John Doe, either directly or by those on its behalf, makes calls to residents of South

Carolina.

## VENUE AND JURISDICTION

7.  This cause of action arises out of conduct of Defendants initiating telephone calls to
    Plaintiff's wireless telephone number in Charleston County South Carolina.

8.  Plaintiff is a resident of Charleston County and venue is proper in this District pursuant to
    28 U.S.C. § 1391(b)(1)-(2), because a substantial part of the events giving rise to the
    claims-the calls and sale of goods and services directed at South Carolina residents,
    including the Plaintiff-occurred in the District and because Plaintiff resides in the District.

9.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims
    pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin.*
    *Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter
    jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy
    Protection Act, S.C. Code Section 37-21, because the state claims arise from the same
    nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little
    complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this
    chapter must be construed to limit any remedies, causes of action, or penalties available to
    a person or governmental agency under another federal or state law."

10. This Court has general personal jurisdiction over the defendant because they have
    repeatedly placed calls to South Carolina residents, and derived revenue from South
    Carolina residents, and sell services to South Carolina resident, including the Plaintiff.

11. This Court has specific personal jurisdiction over the defendants because the calls at issue
    were sent by or on behalf of the defendants and they knowingly called into South Carolina
    to a South Carolina phone number to solicit South Carolina residents.

## The Telephone Consumer Protection Act

12. Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an automated telephone dialing system ("ATDS") or with a prerecorded or artificial voice are referred to as "robocalls" by the FCC. Encouraging individuals to hold robocallers accountable, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

13. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

14. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

15.    The Federal Communications Commission ("FCC") has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted) (internal quotation marks omitted).

## The South Carolina Telephone Privacy Protection Act

16.    In pertinent part and as amended, at Section 37-21-40 (A), the "SCTPPA" requires of all telephone solicitations into the State, "[A]t the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made..."

17. The SCTPPA prohibits (a) initiating a telephone solicitation call that does not "provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made" (b) initiating a telephone solicitation to a telephone number on the National Do Not Call Registry

18. At Section 37-21-80 (A), the "SCTPPA" provides, "A person who is aggrieved by a violation of this chapter is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation."

19. At Section 37-21-80 (B), the "SCTPPA" provides, "If the court finds a wilful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation."

20. At Section 37-21-80 (B), the "SCTPPA" provides, "Notwithstanding another provision of law, in addition to any damages awarded, the person initiating the action for a violation of this chapter may be awarded reasonable attorneys' fees and court costs."

### The Worsening Problem of Robocalls

21. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

22. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In*

*re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

23.    *The New York Times* recently reported on the skyrocketing number of robocall

complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes,*

*It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also*

Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About*

*Them*, Wall St. J. (July 4, 2018),

24.    Even more recently, a technology provider combating robocalls warned that nearly half of

all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly

50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018),

## **FACTUAL ALLEGATIONS**

25.    Plaintiff has been the sole subscriber to the wireless number 843-718-XXXX for over five

(5) years.

26.    The number 843-718-XXXX was on the National Do Not Call Registry prior to the

alleged calls to the Plaintiff.

27.    Plaintiff uses 843-718-XXXX for residential purposes.

28.    On or about October 26, 2022, a call ("First Call") was initiated to the Plaintiff's wireless

telephone line 843-718-XXXX.

29.    The First Call transmitted 346-239-2329 as the caller ID, a non-working working number

(aka "spoofed caller ID").

30.    The purpose of the First Call was to deliver a solicitation.

31.   The First Call was made by or on behalf of John Doe 1.

32.   Plaintiff answered the First Call, which began with a message from "Mary" with "Central Processing Center for Federal Back Tax Negotiations."

33.   A true and accurate transcript of the introduction message in the First Call is incorporated herein and attached hereto as Exhibit A.

34.   Plaintiff immediately suspected the message was prerecorded, and that "Central Processing Center for Federal Back Tax Negotiations" was an alias name used to secrete the real name of John Doe 1.

35.   After the message, Plaintiff was transferred to a live representative who identified himself as "Paul".

36.   Throughout the First Call, Plaintiff asked Paul several times for the name, address, email contact and a working phone number for John Doe 1.

37.   Paul refused to provide the name, address, email contact or working telephone number for John Doe 1.

38.    The First Call was disconnected by a John Doe 1 representative.

39.   On or about November 8, 2022, a second call ("Second Call"), was initiated to Plaintiff's wireless telephone line 843-718-XXXX.

40.   The Second Call transmitted 818-691-5870 as the caller ID.

41.   A copy of the AT&T phone record identifying the inbound call to Plaintiff's wireless telephone number 843-718-XXXX from 818-691-5870 is attached hereto and incorporated herein as Exhibit "B".

42.   The purpose of the Second Call was to deliver a solicitation.

43.  The Second Call was made by or on behalf of John Doe 1.

44.  Plaintiff answered the Second Call and the representative identified himself as "Paul".

45.  Paul, the same John Doe 1 representative from the First Call, acknowledged the Second Call was a follow-up to the First Call to solicit tax debt relief service.

46.  The representatives in the Second Call refused to provide the actual identity of John Doe.

47.  The First and Second Calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for Defendant's tax debt relief services.

48.  Plaintiff has received other calls from "Mary" with "Central Processing Center for Federal Back Tax Negotiations".

## CAUSES OF ACTION

### Count One:

### Violations of the TCPA's Automated Calling provisions

49.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

50.  The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making a call, except for emergency purposes, to the cellular telephone number of Plaintiff using an ATDS to deliver a prerecorded message.

51.  As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is

presumptively entitled to an award of $500 in damages for each and every violation to his cellular telephone number using a recorded message in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

52.    The Defendants' violations were negligent and/or knowing.

## Count Two:

## The National Do Not Call Registry

53.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

54.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

55.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

56.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is presumptively entitled to an award of $500 in damages for each and every violation to his cellular telephone number using a recorded message in violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

**Count Three:**

**Violations of the SCTPPA**

57.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do Not Call Registry  (b) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made".

59.    The Defendants' violations were negligent and/or knowing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys fees pursuant to the SCTPPA;

- For an Order enjoining the Defendants from using anonymous calls that transmit spoofed caller IDs to make solicitation calls to South Carolina residents.

- For unspecified punitive damages in an amount to be determined by this Court.

- For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

Jay C. Connor *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
(843) 718-8180
Jayc650@hush.com

February 8, 2023